By the Court.—Sorugham, J.
The judgment of separation in this case was founded solely upon the ground of abandonment, and it is only necessary that we determine whether the facts disclosed by the pleadings and evidence are such as constitute sufficient cause for a separation on that ground.
It is not, under our statute, sufficient to show that the husband has abandoned the wife, but it must also appear that he has either refused or neglected to provide for her.
*260 Begarding the marriage contract as stable and sacred, our law does not favor separations between husband and wife, and to justify a judgment for limited divorce on the ground of abandon-
ment, such circumstances must appear as manifest a settled and determined purpose in the husband to withdraw from the wife permanently his society and protection, and to withhold from her the means necessary for her support.
In this case the defendant called on the plaintiff’s father on the 24th July, 1861, in a state of excitement, and told him that he.must take his daughter home immediately, as she had been guilty of adultery, and he would' not live with her longer, or contribute to her support, and afterwards, in the evening of the same day, the witness Grey found the plaintiff and defendant at their house in a great state of excitement, and it is upon his testimony of what then occurred that the charge of abandonment is founded. He testifies in that respect as follows: “ He at first refused to let her take her clothes; he finally consented she could take them if he could inspect them ; while she waspreparing the clothes defendant and I were in the parlor; when she go.t ready to leave the house she came down into the parlor, and, as. she came in the door defendant got hold of her hand and got down on his knees and dragged his little boy down with him, and says ‘Before you go, Mary, confess to this thing and destroy one,’ and appealed to her by her dead child •in Heaven. She said, ‘ Bichólas, I am not guilty and yon know it.’ He immediately jumped from his knees and jerked up his boy and pointed to the.door, and said, Go then!’ and as she and I were going out of the door, he said he would never live with her again. He said during. the evening he would never give her any more support, nor give a penny for .her expenses; that he would rot in jail first ■
It is evident that the defendant was at this time under great excitement,' and when it is considered that he had two or three weeks before accused her of the same offence and made the same declarations, and yet continued to live with her and support her, and that the. parties fully cohabited ás man and wife for weeks after such charge and declarations, his conduct on the evening of the 24th July should be regarded as proceeding from temporary excitement and anger rather than as conclusively' *261 .indicating a fixed and settled purpose to abandon her. To fix upon it such a character in view of the previous "occurrences to which I have alluded, something more should have been shown; as that the defendant had subsequently refused to receive the plaintiff or to contribute on demand to her support, or that a considerable period had elapsed during which he had neglected to supply her with necessaries or funds. No such circumstance appears, but within a week from the time she left the defendant’s house the plaintiff verified her complaint in this action, and caused the summons to be served within three days thereafter. The period was too short to render it incumbent upon the defendant to tender funds for her support, especially as he knew that she was with her relatives.
There is no evidence that he neglected or refused to furnish her with necessaries while they were living together. The direction to the milkman ‘never to leave any milk at the house except what he got money for,’ does not prove that milk was not provided, or that the defendant discharged the milkman.”
The judgment should be reversed, and a new trial ordered, without costs of this appeal.